CASE 66—PETITION EQUITY—MAY 9.

# Halley, &c v. Winchester Diamond Lodge.
# Halley v. Winchester Diamond Lodge.

### APPEALS FROM CLARK CIRCUIT COURT.

1. FAILURE OF MAKER OF TRUST TO JOIN WITH TRUSTEE IN CONVEYANCE—RENTS AND IMPROVEMENTS.—Where land was conveyed to a trustee with power to sell and convey the land, and apply the proceeds to the payment of certain debts of the grantor, which were a lien upon the land, and the land was sold and conveyed by the trustee and the proceeds applied as directed, that sale and conveyance having, in an action brought by the purchasers to quiet their title, been treated as void because the grantor in the deed creating the trust did not unite with the trustee in his conveyance, the purchasers should be allowed, as against the heirs of the trustee's grantor, to treat the rents as an equivalent to the interest on the purchase money, and have an account for improvements, which they have erected in good faith, the trustee's grantor having acquiesced in the sale and conveyance by the trustee and the erection of the improvements by the purchasers, and even rented from them a part of the land. Under these circumstances the rule indicated, which is that usually applied between vendor and vendee where the contract is rescinded because the title can not be perfected, is the equitable one, and should be applied rather than the rule generally applied between adverse claimants, the heirs of the grantor occupying no better attitude than their ancestor would occupy if living. In such cases courts of equity follow no rigid rule, where to do so would be unjust and oppressive.

2. SAME.—It is doubtful if the statute of 1820 (Gen. Stats., chap. 63, sec. 22) prohibiting conveyances by trustees unless the maker of the trust joined therein, is applicable to this case, in view of the purpose for which the deed of trust was executed, and the fact that the wife of the debtor was required to join in the deed, thus indicating a purpose on the part of the grantors to surrender all interest in the property and in the execution of the trust. But in the absence of the deed of trust from the record the court will not decide that question (which is raised by the cross-appeal), although it is strongly inclined to hold that the statute is not applicable.

Halley, &c v. Winchester Diamond Lodge.

B. F. BUCKNER FOR APPELLANTS.

1. The appellants under the rule applicable to adverse claimants are entitled to recover against the appellees the reasonable rents and profits on the lands for the time they were held by the appellees. (Mayne on Damages, 391; 1 Chitty on Pleading, 215; Meyers v. Sanders' Heirs, 8 Dana, 65; Marshall v. Dupuy, 4 J. J. M., 388; Boyd v. Barclay, 4 Dana, 227; Harris v Jones, 6 B. M., 389; R. & L. Turnpike v. Rogers, 7 Bush, 535; Trabue v. Kellar, 3 Mar., 518; Thomas v. Thomas' Exors., 16 B. M., 421.)

2. The rule usually applied between vendor and vendee where the contract is rescinded because the title can not be perfected, which considers the interest on the purchase money paid as equivalent to the rents on the lands, does not apply to this case. (Williams' Heirs v. Wilson, 4 Dana, 509; Cogwell's Heirs v. Lyon, 3 J. J. M., 41; Morton's Heirs v. Ridgway, 3 J. J. M., 258; Taylor v. Porter, 2 Dana, 275; Bell v. Barnett, 2 J. J. M., 530; Ewing v. Handley, 4 Littell, 372.) .

3. The appellees are entitled to recover as an allowance for improvements only the enhanced value of the land by reason of the improvements erected.

4. The land was conveyed to the appellees by the trustee without the grantor joining in the deed, and no title, therefore, passed by the conveyance; nor can the appellees proceed either against the heirs of the grantor or the land for the recovery of the purchase money, since there was no warranty of title. (Gen. Stats., chap. 63, art. 1, sec. 22.)

5. Even viewing the sums of money paid to the trustee as debts against the estate of the grantor, it was essential to a recovery that the personal representative be made a party, and that the verification required by law should precede the judgment for the sale of the land. (Lawrence v. Hayden, 4 Bibb, 229; Landsdale v. Cox, 7 Mon., 402; Gen. Stats., c. 44, sec. 6; Haggin v. Patterson, 10 Bush, 441; Civil Code, sec. 437.)

6. The only legal or equitable right which the appellees can claim is the right of subrogation to the right of the trustee to recover from the persons to whom he paid the purchase money.

BECKNER & JOUETT FOR APPELLEES.

1. In no event have the appellants any equitable interest in the land, since, if there was left any estate of value in the land, it should go to the payment of the balance on the debt for the satisfaction of which the conveyance in trust was made.

2. The grantor, if living, would be estopped to set up any claim to the property, since for three years after the conveyance he

acquiesced in the sale of the same by the trustee as directed by himself, and failed to raise any objection to the making of improvements by the appellees. The appellants are entitled to no more rights than he had. (Prather v. McDonald, 8 Bush, 46; Butler v. Miller, 15 B. M., 625.)

3. The wife of the grantor can not assert right of dower since she joined in the conveyance to the trustee.

4. The grantor having given to the trustee the power and· directed him to sell the property conveyed in trust for the payment of certain of his debts, the act of 1820 does not apply. (Ogden v. Grant, 6 Dana, 173; Reed v. Welch, 11 Bush, 450.)

5. The purchase price paid by the appellees to the trustee was applied to the payment of a debt which was secured by a mortgage; and the appellees are entitled, upon defect in their title, to be substituted to the rights of the mortgagee, and to be allowed a lien upon the land for the recovery of the purchase money. (McCampbell v. McCampbell, 5 Littell, 92; Story's Equity Jurisprudence, sec. 1237; 1 Marshall, 246; 4 Littell, ·371; 1 Marshall. 389; 1 Monroe, 161; 4 Bibb, 511; 2 Monroe, 126; 3 B. M., 66; 14 B. M., 293; 16 B. M., 424; 5 Bush, 433; 7 Bush, 45; 9 Bush, 718; 80 Ky., 189; 10 Ky. Law Rep., 879; 7 S. W. Rep., 538; Gen. Stat., ch. 80, sec. 1.)

6. The amount allowed by the court for improvements was not palpably or flagrantly against the evidence, and the appellants are, therefore, not entitled to a reversal. (Proctor v. Smith, 8 Bush, 85; Hall v. Brumond, 7 Bush, 44; Haskins v. Spiller, 3 Dana, 575;Whitledge v. West, Sneed, 336.)

GEORGE B. NELSON on the same side.

1. The rule which pertains to the adjustment of rents and interest between the vendor and vendee upon a rescission of the contract for failure to make perfect title, under which the rents and interest are considered as equivalent, is applicable to this case. (Williams' heirs v. Wilson, 4 Dana, 509; Taylor v. Porter, 1 Dana, 423; Williams v. Rogers, 2 Dana, 375.)

2. The appellees having, upon the faith of a colorable title by reason of the conveyance to them by the trustee, paid the purchase price of the land, and taken the possession of same, and erected improvements upon same, they can not now be deprived of the possession thereof by the heirs without first receiving just compensation. Bell's Heirs v. Barnett, 2 J. J. Marshall, distinguished.

L. H. JONES of counsel on the same side.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

On June 9, 1875, Anderson Halley and his wife, and Ben Simpson and his wife, conveyed to W. M. Beckner certain real estate in the city of Winchester in trust, with power to sell the same and convey it to the purchaser, and with the proceeds pay a debt due one John Taliaferro, secured to him by a mortgage on the land.  The remainder of the purchase price, if any, was to be applied to the payment of a lien on the land held by Ben Simpson.  In execution of the trust Beckner sold the lands to the appellees, and applied the proceeds to the Taliaferro debt, there being nothing left for the Simpson debt, but in the conveyances made therefor neither of his grantors or their wives joined.

The appellees were put in possession of the respective portions bought by them, and erected valuable improvements thereon.  In October, 1889, conceiving that the failure of Beckner's grantors to join in the conveyances created a cloud on their title, the appellees brought these suits in the nature of *quia timet*, making Beckner and the heirs and representatives of Halley and Simpson defendants thereto.

A demurrer was sustained to their petitions, and thereupon, without in terms abandoning their claim of ownership, the appellees filed amendments setting out the amount of purchase money paid by each, and the value of the improvements erected by them on the property.

Issues were joined, and the cases heard after reference to the master, who took proof as to the improvements, rents, etc.  The court rendered a judgment subjecting the property to the payment of the purchase money paid out by the respective appellees, and to the payment, also, of the value of the improvements.

No defense was made for the Simpsons, but the Halleys have appealed from the judgment, insisting that although they are adjudged to be the owners of the property, yet the conditions imposed—of paying the large sums adjudged to be liens on the property—are not such as the law authorizes.

They contend that by this judgment "the wrongful occupants of land adjudged to have no title are repaid the total amount of their purchase money, the amount expended for improvements, the amount expended for taxes, are given the use of land *gratis* during more than seven years, and the real owners are adjudged to be entitled to possession only on paying this extravagant account of charges."

The case of Myers, &c. v. Sanders' heirs, 8 Dana, 65, is urged as a case exactly in point, where this court said: "It would seem inconsistent with all rule to allow a trespasser to make the person trespassed against his debtor for improvements made without his consent and against his will, or to allow him to set them off against the damages to which he has justly subjected himself by his trespass."

Many other cases of like import are also cited by counsel for appellants.

On the other hand, counsel for the appellees contend for the application of the rule recognized in Williams v. Rogers, 2 Dana, 374, where the court said: "Where there has been no fraud or manifest injustice in the conduct of either party, and the one has enjoyed the use of the land, and the other has enjoyed the use of its accepted equivalent, the general rule of equity now recognized in this court, is that in decreeing a rescission for inability to convey the legal title, the land should be restored to the vendor, without any account for profits, and the price should be refunded to the vendee, without interest; whereby, according to their own

estimate of equivalents—the one deeming the use of the price, to him, equal to that of the land, and the other deeming the use of the land, to him, equal to that of the price— they would be each so far reinstated. But if the vendee shall have made valuable and permanent improvements, or shall have committed waste, or otherwise *improperly* injured the land, there should be an account for waste, if any, and for improvements, if any." And this rule is shown to have been adopted and approved in many cases.

The question presented, in view of these contentions, therefore, is what rule is to be adopted in the adjustment of rents, interest and improvements?

If the one generally applied between adverse claimants of land, by which the successful claimant becomes entitled to all the incidents of ownership for the time he has been wrongfully kept out of possession, subject to an equitable set-off for ameliorations, then the judgment is erroneous, but if the one usually applied between vendor and vendee when the contract is rescinded because the title can not be perfected, and the vendee is allowed, upon being compelled to surrender the property, to treat the rents as an equivalent to the interest on the purchase money, and have an account for improvements, if any, then the judgment is to be approved.

It is apparent that the parties to the original transactions acted in the utmost good faith. The deed of trust is not in the record, but the averments of the petition show that Halley and Simpson, *together with their wives*, conveyed the property to Beckner for a certain specific purpose, and he was empowered to sell and convey it to the purchaser.

It may well be argued that the grantors had no further interest in the property, and intended to reserve none in the execution of the trust. The circumstance that their wives

were required to join in the conveyance is in harmony with the intention to so surrender all interest, hence it is doubtful if the statute of 1820 (Gen. Stat., chap. 63, art. 1, sec. 22), prohibiting conveyance by trustees unless the maker of the trust join therein, is applicable to this case. We are so treating the conveyance herein, and only refer to the doubtful application of the statute to show that the subsequent conduct of the parties was in accordance with the apparent intention on the part of the grantors to release all interest in the property. The purchasers (appellees) bought and paid for the property in like good faith, and erected valuable improvements under the belief that they had perfect title.

While the appellants and the appellees technically occupy the attitude of adverse claimants, yet the appellants in fact claim only through and under their ancestor, Anderson Halley, and we think can occupy no better attitude than he would occupy if he were living. The proof shows he lived several years after the sale and conveyance by Beckner, and approved of and consented to that sale. Indeed, had rented some of it from the vendee of Beckner. He stood by without objection and saw the appellees pay full value for the property, and expend their money on it in the erection of valuable improvements.

To apply the rule contended for by learned counsel for appellants, under such circumstances, would be most inequitable, and we would apply it only in pursuance of some inexorable law demanding it. There are a multitude of cases touching questions somewhat similar to the one under consideration, and while certain general rules are followed, it seems to be the purpose in all the cases to follow no rigid rule where to do so would be unjust and oppressive.

And what rule more just can be applied in this case than to limit and subordinate the right of the heir to that of his

ancestor? Even the mortgage debt due by the ancestor to Taliaferro remains unsatisfied, and so also the Simpson lien. These were not even debts against Halley, but were liens on the land, and upon the plainest principles of equity the appellees would be entitled to be subrogated to the creditor, Taliaferro, whose lien they satisfied, and this is effected by the chancellor as the judgment charges the land with the purchase price paid to Beckner by the appellees.

On the cross-appeal of the appellees it is enough to say, in the absence of the deed of trust, and on the rather indefinite recitation of its contents in the petitions, that we are not disposed to consider the question whether or not the conveyance to Beckner is within the statute named.

Under the principles announced in Ogden v. Grant, 6 Dana, 473, Prather v. McDowell, 8 Bush, 46, Reed v. Welsh, 11 Bush, 450, and other cases cited, it may well be doubted whether the makers of the deed of trust in this case needed to have joined in the conveyance made by Beckner. But the deed, as we have seen, is not before us, and we adopt the chancellor's construction of it for that reason, under a strong inclination, we admit, to hold the statute inapplicable.

Let the judgment on the original and cross-appeal be affirmed.